BEDFORD STONE AND CONSTRUCTION COMPANY
ET AL. v. HENNIGAR ET AL.

[No. 23,280.   Filed December 20, 1918.]

1. MASTER AND SERVANT.—*Injury to Servant.*—*Independent Contractors.*—Neither the owner of a building being constructed who maintained no control over the building and the elevators except to see, through an architect, that they conformed to the plans and specifications, nor an independent contractor who maintained no control over its independent subcontractor, except to see that the metal work around the elevators conformed to the specifications, is bound to comply with the Dangerous Occupations Act, Acts 1911 p. 597, §3862a *et seq.* Burns 1914.   p. 720.

2. MUNICIPAL CORPORATIONS.—*Regulation of Elevators in Uncompleted Building.*—*Ordinance.*—The ordinance of the city of Indianapolis regulating the operation of elevators, safety devices thereon and qualifications of operators, does not apply to elevators in the course of construction in uncompleted buildings, but to completed elevators in buildings used by the owners for business purposes.   p. 720.

From Marion Superior Court (84,518) ; *John J. Rochford,* Judge.

Action by James C. Hennigar, administrator of Frank H. Bloemer, deceased, against the Bedford Stone and Construction Company and others.   From a judgment for the plaintiff, the defendant appeals.   (Transferred from the Appellate Court under §1405 Burns 1914, Acts 1901 p. 590.)   *Reversed.*

*John B. Elam, Howard S. Young, J. W. Fesler* and *Harvey J. Elam,* for appellants.

*Henry W. Bullock,* for appellee.

TOWNSEND, J.—Appellee obtained judgment against appellants for negligence which caused the death of Frank H. Bloemer.   The William H. Block Company was also a defendant.

The complaint is in three paragraphs and is in sub-

stance that appellee's decedent met his death on August 15, 1911, while working on a building owned by William H. Block Company and William H. Block of Indianapolis, Indiana; that appellant Bedford Stone and Construction Company was, with appellant Block and the Block Company, engaged in the erection of this building; that they had joint and complete charge, supervision, and control of the building, machinery, elevators and mechanism therein; that appellants and the Block Company had erected and, by agreements and contracts with other parties, had caused to be erected and installed a large number of elevators in this building; that said elevators had been fully accepted by the appellants and said Block company and were completely under the control, direction, supervision, and care of appellants and said company; that appellants had invited decedent and other workmen and mechanics to come into this building and perform work necessary to complete the placing of doors and appliances and materials around the elevator shafts; that appellee's decedent was engaged at the time in doing this work, and was performing these services with the express understanding and representation by the appellants that while he was employed in that work he would be under safe conditions and would be protected; that the elevators in said building would not be operated or placed in motion while he was at work around the elevator shafts; that appellants were informed and advised that he was working around the elevator shaft where the accident occurred hanging and assembling doors to said shaft; that, well knowing that he was so employed, appellants left said elevator shaft open, unguarded, and unprotected; that each of them gave instructions and invitations to all persons, who desired to go upon any part of said building or to hoist material at any time, to use any of said elevators at their pleasure without re-

gard to any warning or signals, and without regard to the competency or incompetency or experience of the persons who might use said elevators for passenger use or for the hoisting or lowering of any materials; that appellee's decedent was working in the basement of said building placing doors, fastening hinges and appliances on and around the shafts of the elevators in said buildings, standing upon a scaffolding with his head and arms through an opening into the shaft of said elevator, when appellants unlawfully, negligently, forcibly, and without warning lowered and forced down upon him an elevator, by which he was killed.

The second and third paragraphs are substantially the same as the first, except that the third paragraph pleads six sections of the ordinances of the city of Indianapolis as to the operation and equipment of elevators.

Appellants and the Block company filed demurrers to the complaint, which were overruled. They then answered by general denial and two special paragraphs of answer. Demurrers were sustained to the special paragraphs of answer. Trial resulted in the general verdict against appellants, the court directing a verdict for the William H. Block Company. The court submitted interrogatories to the jury, to which they returned answers with their general verdict. The separate motions by appellants for judgment on the interrogatories were overruled, as were also their motions for a new trial.

Inasmuch as the judgment must be reversed for the error of the court in overruling the separate motions of appellants for judgment on the interrogatories, it will be necessary to discuss only such questions as affect this ruling.

The answers of the jury to the interrogatories show that appellant Bedford Stone Company was an independent contractor erecting a building in Indianapolis

for appellant William H. Block; that the Otis Elevator
Company, as an independent contractor, installed the
elevators in this building for appellant Block; that the
Vonnegut Hardware Company, as an independent sub-
contractor under appellant Bedford Stone Company,
agreed to install the metal work and doors around the
elevator shafts; that this hardware company, under
some arrangement of its own, turned this work over to
the Dahlstrom Door Company, an independent subcon-
tractor under the hardware company; that appellee's
decedent at the time of the accident was engaged on
this work for the door company; that he had his head
through a transom or opening in the elevator shaft in
the basement; that two employes of the Otis Elevator
Company, desiring to go to the basement to look for
tools, stepped onto this elevator and caused it to descend
upon appellee's decedent, thereby inflicting the injury
which caused his death; that at the time of the accident
the Otis Elevator Company had not completed the ele-
vators and was working on them; that the employe of
the Otis Elevator Company, who ran the elevator at the
time of the accident, had been engaged in doing work
on the elevators for several hours previous to the acci-
dent; that appellant Block had no control of the build-
ing in question except through his architect to see that
the same conformed to plans and specifications; that
appellant Bedford Stone and Construction Company had
no control over the Vonnegut Hardware Company or the
Dahlstrom Door Company except to see that the metal
work and doors conformed to the specifications in their
general contract; that previous to the accident there
had been a temporary acceptance of the elevators by
the architect of the building; that at this time said
elevators were inspected by John F. Feigen; that Mr.
Feigen told Mr. Branson, the superintendent for ap-
pellant Bedford Stone and Construction Company, that

the passenger elevators could be used for hoisting materials if he would put guard rails along the hatchways on the first and second floors; that wooden rails were put on; that the elevators were turned over to the building for the use of persons engaged in work on the building in hoisting materials; that the elevator at the time of the accident was being run entirely for the purposes of the Otis Elevator Company.

This, case was tried upon the mistaken theory that the owner, who maintained no control over the building and the elevators except to see, through an architect, that they conformed to plans and specifications, and the independent contractor, who maintained no control over the Vonnegut Hardware Company or the Dahlstrom Door Company other than to see that the metal work around the elevators conformed to specifications, are bound to comply with the provisions of Acts 1911 p. 597, §3862a *et seq.* Burns 1914, relating to dangerous occupations. *Switow* v. *McDougal* (1915), 184 Ind. 259, 111 N. E. 3; *Leet* v. *Block* (1914), 182 Ind. 271, 106 N. E. 373.

The case was also tried on the mistaken theory that the sections of the ordinance of the city of Indianapolis concerning the operation of elevators and the qualifications of operators, and the safety devices thereon, applied to these elevators in the course of construction in this building. It is very obvious that these provisions of the ordinances of the city of Indianapolis were intended to apply to completed passenger and freight elevators in buildings occupied by owners and lessees for business purposes, and not to those in the course of construction, as in this case. These mistaken theories as to the law and the ordinances led to various errors in instructions given to the jury and in the admission and exclusion of evidence.

The jury by its answers to special interrogatories has

found against appellee on all the essential ultimate facts in issue.

Judgment reversed, with instructions to the trial court to sustain the separate motions of appellants for judgment on the interrogatories.

NOTE.—Reported in 121 N. E. 277. Liability of owner or occupier of building where operation of elevators is let to independent contractor, 32 L. R. A. (N. S.) 945. Master and servant: liability of master when independent contractor has control, 54 Am. St. 91, 76 Am. St. 384. See under (1) 26 Cyc 1553; (2) 10 C. J. 609.