**Charles CURTIS, Appellant
(Plaintiff Below),**

v.

**Writha HANNAH, Connie Edwards,
Appellees (Defendants Below).**

No. 1–580A119.

Court of Appeals of Indiana,
First District.

Jan. 19, 1981.

Russell E. Mahoney, Gray, Stratton & Mahoney, Petersburg, for appellant (plaintiff below).

Thomas J. Kimpel, Evansville, for appellees (defendants below); Merrill, Schroeder & Johnson, Evansville, of counsel.

ROBERTSON, Judge.

This case arises out of the granting of summary judgment by the trial court to the appellees-defendants, Writha Hannah (Hannah) and Connie Edwards (Edwards), in a suit by appellant-plaintiff, Charles Curtis (Curtis), to determine rights and compel specific performance in a land sale contract.

We reverse and remand.

The facts most favorable to the nonmoving party are that Hannah and Edwards signed a contract for the sale of land in which they promised to convey certain lands to Curtis. However, it is further undisputed that the two owners were two of a total of three tenants in common of the land in question. It is also undisputed that the third tenant in common did not sign the contract, although the contract contemplated that she would do so.

The trial court in the findings of fact and conclusions of law summed up its decision in the statement, "That the contract was drawn as a mutual agreement and must be executed by all parties before it will bind any of them."

Three issues are presented for our review. The first is whether the trial court properly denied the appellant's motion for summary judgment. This is, of course, not an issue for our review at this stage of the proceedings. *Pitts v. Wooldridge*, (1974) 161 Ind.App. 404, 315 N.E.2d 736. The second error alleged is an abuse of discretion by the trial court in allowing the defendants to amend their answer and interpose affirmative defenses. The appellant claims he was prejudiced by this allowance. The trial court is given broad discretion under Ind.Rules of Procedure, Trial Rule

15(A) to allow amendment of answers. *Huff v. Travelers Indemnity Co.*, (1977) 266 Ind. 414, 363 N.E.2d 985. We do not think the bald objection raised below that the plaintiff was "prejudiced" directed the trial court to an abuse of discretion. Further, the prejudice raised for the first time on appeal goes to the nature or contents of the amended answer. If Curtis thought the amended answer was defective, he could have or can attack it under our rules of procedure. At the least, we see no abuse of discretion here.

The third issue on appeal is whether the trial court properly granted summary judgment to the defendant-appellees.

When reviewing the grant of summary judgment, the appellate court must determine whether there is any genuine issue of material fact and whether the law was correctly applied. *Matter of Big Raccoon Conservancy District et al. v. Kessler Farms Corp.*, (1977) Ind.App., 363 N.E.2d 1004; *Hale v. Peabody Coal Co.*, (1976) [168 Ind.App. 336] 343 N.E.2d 316; Ind. Rules of Procedure, Trial Rule 56. The burden is upon the movant to establish that no material facts are in genuine issue and any doubt must be resolved against the movant. *Hale, supra* at 320. Thus, for purposes of determining whether to grant the motion, the facts set forth in the non-moving party's affidavits are taken as true, and the products of discovery are liberally construed in his favor. *Hale, supra* at 320; *Podgorny v. Great Central Insurance Co.*, (1974) 160 Ind.App. 244, 311 N.E.2d 640. And, even if the facts are not in dispute, summary judgment is not appropriate when the information before the court reveals a good faith dispute as to the inferences to be drawn from those facts. *Hale, supra* at 320; *Yerkes v. Washington Manufacturing Co., Inc.*, (1975) 163 Ind.App. 692, 326 N.E.2d 629. "In short, summary judgment is not a procedure for trying facts and determining the preponderance of the evidence. Rather, it is a procedure for applying the law to the facts when no factual controversy exists." *Central Realty, Inc. et al. v. Hillman Equipment,*

*Inc.*, (1969) 253 Ind. 48, 57, 246 N.E.2d 383, 389.

*Ang v. Hospital Corp. of America*, (1979) Ind.App., 395 N.E.2d 441, 443.

The law on the subject is adequately set out in 17 C.J.S. Contracts § 62, p. 734–35:

It has been held in numerous cases that, where an instrument has been executed by only a portion of the parties between whom it purports to be made, it is not binding on those who have executed it. The cases so holding are usually those in which the parties executing the instrument would have a remedy by way of indemnity or contribution against the other parties named, which remedy is lost by the failure of such other parties to execute the instrument.

The question as to whether those who have signed are bound is generally to be determined by the intention and understanding of the parties at the time of the execution of the instrument. The reason for holding the instrument void is that it was intended that all parties should execute it and that each executes it on the implied condition that it is to be executed by the others, and therefore, that until executed by all it is inchoate and incomplete and never takes effect as a valid contract, and this is especially true where the agreement expressly provides, or its manifest intent is, that it is not to be binding until signed. [Footnotes omitted.]

It has also been stated in *Kaneko v. Okuda*, (1961) 195 Cal.App.2d 217, 225, 15 Cal. Rptr. 792, 796–97:

It is not the rule that a contract, which on its face purports to be between the parties named in the instrument, must invariably be executed by all whose names appear in the instrument before it will be binding on any. In the absence of a showing that a contract is not to be deemed complete unless signed by all parties, the parties signing may be bound though others have not signed. In determining whether the promises were joint or joint and several, when uncertainty

arises concerning the meaning of a contract the language used by the parties is to be considered in the light of the surrounding circumstances and the practical and mutual construction placed thereon as shown by their acts and conduct before any controversy has arisen between them. [Citations omitted.]

In *Cox v. Berry*, (1967) 19 Utah 2d 352, 357, 431 P.2d 575, 579, it was stated:

Even where it appears that it was intended that others sign an agreement, it is not necessarily invariably true that all must sign before any are bound. This depends upon the agreement and whether it appears that part of the consideration for signing was that others would also sign and be bound jointly with them. It is usually to be assumed that the parties signing an agreement are bound thereby, unless it appears that they did not so intend unless others also signed. [Footnotes omitted.]

The plaintiff-appellees refer us to *Hess v. Lackey*, (1921) 191 Ind. 107, 112–13, 132 N.E. 257, 258, for the law on the subject. It is true that *Hess* espouses a general rule which could be misinterpreted. However, in the case of *Seco Chemicals, Inc. v. Steward*, (1976) 169 Ind.App. 624, 629, 349 N.E.2d 733, 736. Judge Lowdermilk clearly shows that *Hess* is based on "the bedrock of the intent of the parties." Thus, the question is whether it was the intention of the parties that none would be bound unless all signed the agreement. The nature of the agreement in *Hess* was that it would not be effective unless all signed, thus, *a fortiori*, the intent was that all sign before all were bound.

California courts, in *Angell v. Rowlands*, (1978) 85 Cal.App.3d 536, 149 Cal.Rptr. 574, also distinguish or explain an earlier California line of cases that suggested the "all or none" rule. In that case, a husband seller of real estate and a husband buyer both signed a real estate contract. There was space for the wives to sign, however, neither did so. In a suit for damages for failure to purchase the property, the buyer raised the defense that the wives did not sign. The court rejected the argument and noted that there was no evidence below of intention that the buyer husband would not be bound without his wife's signature. The court stated:

An agreement is valid without the signature of all the parties purportedly bound by the agreement *unless* there is an express intention indicated that there will be no binding contract if all the parties do not sign.

.    .    .    .    .

'If by parol stipulation, or *a fortiori*, if by the writing itself, the contract was not to be deemed, complete until other signatures should be added, it without such addition will not bind those who have signed it; but if nothing of this appears, the parties signing will be holders, though even on the face of it the signatures of the others were contemplated by the draughtsman.'

85 Cal.App. 540–41, 149 Cal.Rptr. 577 (*quoting Cavanaugh v. Casselman* (1891) 88 Cal. 543, 26 P. 515).

▮ In the case at bar, the opposing affidavits do not present a settled factual picture as to the intent of the parties as to whether the tenants would be bound individually. And, under our standard of review we cannot say, *as a matter of law*, that the document itself displays an intent that all of the parties needed to sign before any were bound or that the owners signed only in partial consideration for the third tenant signing. The document does refer to the owners collectively as "owners," however, the consideration is separated for each owner; that is: the sum to be paid to each owner is spelled out separately. Further, a tenant in common can convey his interest separately, and thus, the signature of all three of the tenants is not necessary to the completion of the agreement. Further, the agreement reserved mineral rights to each owner and each owner agreed, jointly and severally, that in the event of strip mining that the buyer would be reimbursed for the value of any improvements. In short, the document is silent or ambiguous as to the issue of the intent as to the necessity of all

signing before all agreeing, and therefore, summary judgment is not appropriate.

Reverse and remand for further proceedings.

NEAL and RATLIFF, JJ., concur.